### JEFF LINDLEY *v.* THE STATE.

1. BILLS OF EXCEPTION — PRACTICE.— Affidavits will not suffice to authenticate the recitals in a bill of exception which are qualified or disputed by the trial-judge in his note of explanation thereto. If the court refuses a full and fair bill of exceptions, the defendant is authorized to resort to by-standers.

2. PRACTICE.— If the State has concealed witnesses from the defense until placing them upon the stand, the defendant's resource is by motion in writing for permission to withdraw his announcement for trial. He cannot test his strength with the State and, in the event of defeat, urge such concealment in his motion for new trial. Fairness is incumbent on the prosecution.

3. NEW TRIAL — NEWLY-DISCOVERED EVIDENCE.— Motion for new trial on account of newly-discovered evidence should not be granted when it is clear that the new evidence would not change the result; but when it is doubtful how it would affect the verdict, the doubt should be resolved in favor of the accused. See the opinion for the rule and authorities.

APPEAL from the District Court of Hopkins.   Tried be-
low before the Hon. G. J. CLARK.

The indictment charged the theft of a mule, the prop-
erty of B. H. Elder.   The verdict was guilty, and the
punishment assessed by the jury was five years confine-
ment in the penitentiary.

The opinion sufficiently discloses the case.

*Harris & Leach*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J.   The appellant was convicted of the theft
of a mule.   It appears by bill of exceptions that defend-
ant by his attorney asked the court to "require the pros-
ecuting attorney to disclose the names of the witnesses
present upon whose testimony he relied for a conviction
in the above case; which the court refused to do, to
which ruling the defendant excepted."   To this bill was
attached this explanation: "That when the request was
made the State's attorney referred the defendant's attor-
ney to the order book of the clerk, which he stated con-
tained the names of all the witnesses for the State."

There are affidavits filed and made a part of this record
which show this transaction in a different light; these,
however, cannot be considered by this court.   If the bill
of exceptions fails to give a full account of this matter,
the defendant is at fault.   If the court below should re-
fuse to approve one in which a full and complete history
of this matter is shown, then the defendant must resort
to bystanders as the law directs.   But, suppose there were
witnesses concealed from defendant.   When they were
placed upon the stand the defendant should have, in writ-
ing, moved the court to permit him to withdraw his an-
nouncement.   He will not be permitted to try his strength

with the State, and if beaten urge this matter for a new trial. *March* v. *State*, 44 Texas, 64.

We will take this occasion, however, to state that it is the duty of those representing the State to treat the accused with "fairness, and to inflict injury at the expense of the prisoner is no part of the purpose of the law." *Curtis* v. *State*, 6 Cold. 9. The State cannot afford to engage in the work of chicanery and fraud, especially to convict of felony one of her citizens. When she demands the life, liberty or property of her citizens, her procedure should be bold, liberal and upon high grounds. In the light of the explanations appended to this bill, we cannot see any injury to defendant.

The statement of facts raises the question of the identity of the defendant. A witness by the name of Cun diff swears that he saw defendant leading the mule from the brush into the road near to where the witness was; he did not see the brand, but recognized the mule from its size, color and general appearance. This witness, however, is shown to have made contradictory statements in regard to this matter, by two witnesses. In addition to this his evidence is not of that character which is calculated to rivet conviction on the minds of jurymen. His means of knowledge were not very good. It is questionable, though he testifies to the fact, whether he actually knew the mule in controversy. The State, however, proved by two witnesses that they saw defendant in possession of the mule in Lamar county, but when pressed would not swear positively to his identity. Upon this point Mr. Key states: "I take this to be the same man, though I can't swear it positively." The other witness, Mr. Agnew, when directly called upon to say if he knew defendant to be the same man, answered: "I don't know that I am willing to swear that he is the man."

The defendant moved for a new trial upon the ground of newly-discovered evidence, which is to be found in the

affidavit of J. C. Jones, which is as follows: "That he is acquainted with Jeff Lindley, the defendant in this cause; that on or about the 15th day of January, 1881, he, affiant, was traveling as a wagoner between Hooten's bridge in Hopkins county and Honey Grove in Fannin county, and that he, as he was traveling said road, saw two men approaching him, and that the affiant recognized one of said parties to be Jeff Lindley, and the other party to be Jas. Ray; that said James Ray and said Jeff Lindley, as affiant thought, approached affiant and affiant spoke to said parties, and after recognizing said parties as Jas. Ray and Jeff Lindley, that affiant then and there saw and recognized that Jas. Ray was one of said parties and that Jeff Lindley was not the other party, but that George Nicholls, as affiant was informed by said other party, was then and there in company with said Jas. Ray; that said James Ray and George Nicholls approached affiant and spoke to affiant, and then and there affiant recognized that Jeff Lindley was not one of said parties, but that said other person, George Nicholls, was then in company with James Ray at the said time, and that after speaking with said James Ray and said other party which affiant recognized as Jeff Lindley, affiant then and there saw and recognized that Jeff Lindley was not one of said parties; that said parties had in their possession one paint or spotted pony, and one brown mule, and three other animals not remembered by affiant, and that affiant noticed said paint or spotted pony by seeing said James Ray riding the same, and that he noticed said black or brown mule in the possession of said parties by their offering to trade the same to affiant; that, while offering to trade said brown or black mule to affiant by said parties, that affiant noticed that said brown mule was branded with the letter S on the left shoulder, and that affiant now will swear and is satisfied that Jeff Lindley is not the man or person that had said mule, and was not the

person who was in company with said party or either of them. That affiant was absent from Hopkins county during the entire time that this cause has been in progress, and that the affiant has been absent from Hopkins county since the 1st day of March, 1881, and has resided in the county of Cooke and in the Territory of the Chickasaw Nation until the 14th day of September, 1881; and that the affiant never has as yet communicated to the defendant said facts as above set forth, but has only communicated the same to defendant's attorney and friends; that affiant resided about one hundred miles or more from the residence of defendant during the entire time from the date of defendant's arrest to the date of his conviction, and did not and could not have communicated said facts to defendant."

The facts sworn to in this affidavit are material to the very point which was the pivotal one in this case. We think that upon this newly-discovered evidence the court should have granted defendant a new trial. It is objected, however, by the assistant attorney general that the materiality is not such as is likely to change the result, and unless this be the case the new trial should not be granted. Graham & Waterman, in their work on New Trials, upon this subject remark that, "in cases where the new evidence is material and it is doubtful how in connection with the other testimony it might affect the jury, a new trial should always be granted." They then proceed to state the rule: "If it is clear that the new evidence would not change the result, the motion should be denied; but if it be doubtful as to how it would affect the verdict, the motion should be granted. We are aware that a majority of the cases do not go as far as this, but make it incumbent on the moving party to satisfy the court that, if a new trial were granted, the result would probably be different. This, however, is making the court weigh the testimony and pronounce for the jury

in advance.   And it virtually excludes from the benefits of new trials all cases of doubt.   We do not believe that in practice the rule can be carried to the rigid extent we would be led to suppose from the language of the authorities."   Graham & Waterman on New Trials, pages 1043 and 1044, Note 3.   *Turnby* v. *Evans*, 3 Humph. 222; *Mechanics' Fire Ins. Co.* v. *Nichols*, 1 Harrington, 410; *Robins* v. *Fowler*, 2 Pike, 133; *Smith* v. *Matthews*, 6 Miss. 600; *Com.* v. *Williams*, 2 Ashmead, 69; *Com.* v. *Murray*, 2 Ashmead, 41; *Glover* v. *Woolsey*, Dudley's Ga. Reports, 85; *Ables* v. *Donley*, 8 Texas, 331.

We are of the opinion that the court below should have granted defendant a new trial upon this new evidence, and that there was error in refusing the motion; for which the judgment must be reversed.   The judgment is reversed and the cause remanded.

*Reversed and remanded.*