Filed Sept. 25, 1885.

---

103 142.
134 660,
103 142
144 363
145 215
103 142
155 343
155 344
155 402.

No. 12,488.

## DENNIS v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Sufficiency of Indictment.*—An indictment for murder, which charges that the killing was done by the defendant with a club, is not bad for failing to charge that the defendant held the club "in his hands."

SAME.—*Formal Charge of Assault not Necessary in Indictment for Murder.*—An

Dennis *v.* The State.

indictment for murder may be sufficient without charging the defendant in formal terms with the commission of an assault or an assault and battery on the body of the deceased.

SAME.—*Bill of Exceptions.*—*Omission of Caption.*—*Reporter's Manuscript of Evidence.*— Where a bill of exceptions, containing the official reporter's long-hand manuscript of the evidence, has no caption or preliminary statement, but it appears from the statement signed by the judge and from a memorandum of the clerk preceding and his certificate following, that such manuscript was properly incorporated in a bill of exceptions, such evidence is a part of the record.

SAME.—*Supplemental Motion for New Trial After Final Judgment.*— *When Should be Entertained.*—*Discretion of Court.*—It is within the discretion of the trial court during the term to entertain a supplemental motion for a new trial after final judgment; and in any case of felony, involving the life or liberty of the defendant, such motion, when founded upon matters occurring after final judgment, bearing strongly upon the guilt or innocence of the defendant and supported by affidavits filed therewith, should be heard.

SAME.—*Material New Evidence.*— *What Sufficient for New Trial.*—*Confessions.*— Where a conviction for murder rests on the evidence of one jointly indicted with the defendant, a subsequent confession by such witness which destroys his previous evidence and differs widely from his previous confessions, and materially affects the question of guilt, is a sufficient cause for a new trial.

From the Montgomery Circuit Court.

*W. W. Thornton, D. W. Doty, J. M. Seller* and *J. W. Wright,* for appellant.

*A. B. Anderson,* Prosecuting Attorney, *G. W. Paul, J. E. Humphries, M. D. White* and *W. S. Moffitt,* for the State.

HOWK, J.—On the 23d day of February, 1885, one John W. Coffey and the appellant, James M. Dennis, were jointly indicted in the court below for the murder of one James Mc-Mullen. The indictment was in two counts. The defendants severed in their defence, and the appellant, Dennis, having pleaded to the indictment that he was not guilty as therein charged, was awarded a separate trial. The issues joined as to appellant were tried by a jury, and a verdict was returned on the 22d day of April, 1885, in substance as follows: " We, the jury, find the defendant James Dennis guilty of murder

in the first degree, as charged in the first count of the indictment, and fix his punishment at death."

Over the appellant's motions for a *venire de novo*, for a new trial, in arrest of judgment, and for his discharge from custody, on the 13th day of May, 1885, the court adjudged on the verdict that he suffer death, and from this judgment he has appealed to this court. Afterwards, on the 25th day of June, 1885, before the expiration of the time allowed appellant in which to prepare and file his bill of exceptions, he appeared in open court at the same term thereof, and filed what is called his supplemental motion for a new trial, supported by affidavits. Upon a hearing had of this motion, it was overruled by the court, and appellant's exceptions were duly saved to this ruling.

In this court, appellant has assigned a large number of errors on the record of this cause, and the questions thereby presented have been ably and exhaustively discussed by counsel on both sides, both orally and in written and printed briefs. The view we are constrained by our sense of judicial duty to take of this case will render it unnecessary for us to pass upon all the questions discussed by counsel, but some of those questions we will consider and decide.

It is claimed on behalf of appellant that the trial court erred in overruling his motion to quash each count of the indictment. In the state of the record, it is only necessary for us to consider the question of the sufficiency of the first count of the indictment, as appellant was found guilty solely of the offence charged in that count, and judgment of acquittal of the offence charged in the second count was rendered by the court. The first count charged, in substance, that Coffey and the appellant, " on the 7th day of January, A. D. 1885, at said county and State aforesaid, did then and there unlawfully, feloniously, purposely, and with premeditated malice, kill and murder one James McMullen, by then and there, feloniously, purposely and with premeditated malice, striking, bruising and mortally wounding the said James McMul-

len with a club, of which mortal wound the said James Mc-Mullen then and there died."

The first objection urged to this count of the indictment is, that it is not charged therein that the defendants, or either of them, then and there had or held the club "in their hands," with which it is alleged they killed and murdered McMullen "by striking, bruising and mortally wounding" him. There is no substance, we think, in this objection. It is true that such particularity of statement is found in the old common law forms of indictments, but it is not required, we think, under our criminal code. *Dukes* v. *State*, 11 Ind. 557. When we are convinced that the defendants might have killed and murdered McMullen, by striking, bruising and mortally wounding him with a club, without holding the club in their hands, it is possible, though hardly probable, that we may change our opinion on this question. As at present advised, we must hold that appellant's first objection to the first count of the indictment is not well taken.

The only other objection pointed out to the first count by appellant's counsel is, that it omits to charge the defendants, in formal and express terms, with the commission of an assault or an assault and battery on the body of James McMullen. It may be conceded that such a formal charge can be found in the old common law precedents of an indictment for murder. In this State, however, this court has given its sanction to the form of an indictment for murder, very similar to the one under consideration, and which contained no express charge either of an assault or an assault and battery. *Cordell* v. *State*, 22 Ind. 1. In the opinion of the court in the case cited, the indictment is copied at length and is held to be sufficient. To the same effect, substantially, are the following cases: *Veatch* v. *State*, 56 Ind. 584 (26 Am. R. 44); *Meiers* v. *State*, 56 Ind. 336; *Wood* v. *State*, 92 Ind. 269.

In the case in hand, the first count of the indictment charged the defendants, in plain and unequivocal language, which

could not be misunderstood by any man of common understanding, with the intentional and unlawful killing of James McMullen, with premeditated malice, and we think it was sufficient.

The important and controlling questions in this case arise, as it seems to us, under the alleged errors of the court in overruling the original and supplemental motions of the appellant for a new trial. It is insisted, however, by counsel for the State, that this court can not consider or decide any of the questions arising under either of such motions for a new trial, because, they say, the evidence given on the original trial is not made part of the record by a bill of exceptions. The objection urged to the bill of exceptions containing such evidence is that it has no caption, nor preliminary statement of any kind, to indicate that what follows was the evidence given on the trial of the cause. The evidence was taken down by the official reporter of the court, and the longhand manuscript of such evidence, certified by such reporter in conformity with the statute, appears in the transcript before us without prefatory statement of any kind, except an index of the names of the several witnesses examined and of the page on which the testimony of each witness began. Immediately preceding this manuscript and index in the transcript is the following memorandum of the clerk: " Be it further remembered that afterwards, to wit, on the 18th day of July, 1885, the said defendant James Dennis, by his said attorneys, filed in the office of the clerk of said Montgomery Circuit Court the following bill of exceptions, namely."

Immediately following the certificate of the official reporter, annexed to his long-hand manuscript of the evidence, is the following statement, signed by the judge of the trial court, namely : "And this was all the evidence given in the cause. And the said defendant James Dennis now tenders this, his bill of exceptions, and prays that the same may be signed, sealed and made a part of the record, which is accordingly done this 17th day of July, A. D. 1885." Then

follows the. certificate of the clerk, under his hand and the seal of the court, to the effect " that the above and foregoing is the original long-hand manuscript of the evidence in the case of *The State of Indiana* v. *James Dennis*, filed in my office on the 18th day of July; 1885, and that the same was at that time incorporated into a bill of exceptions, as the same now appears."

Upon the foregoing statement of what is shown by the transcript, upon the point under consideration, we are of opinion that it sufficiently appears' that the long-hand manuscript of the evidence was properly incorporated in a bill of exceptions, and that the evidence given on the trial of the cause is, therefore, a part of the record. Sections 629 and 1410, R. S. 1881 ; *Galvin* v. *State, ex rel.,* 56 Ind. 51.

Something has been said in argument by counsel for the State, to the effect that the filing of appellant's supplemental motion for a new trial, after final judgment, was not authorized by any law or rule of practice. Such motion was filed during the same term of court at which final judgment was rendered, and such motion was entertained by the court, and, after a hearing- thereon upon affidavits and oral evidence, was overruled by the court, all without objection or exception on the part of the State, so far as we can find. At all events, the action of the court in permitting appellant to file such motion is not called in question here by the State by any assignment of cross error. The question, we think, is not properly presented for our decision. But if it were we would be of opinion that the question is one which addresses itself to the sound discretion of the trial court, and that, in any case of felony, involving the life or liberty of the defendant, it would be an absolute abuse of .such discretion to refuse to entertain a supplemental motion for a new trial, founded upon matters occurring after final judgment, bearing strongly upon the guilt or innocence of the defendant, and reasonably supported by the affidavits therewith filed. In-this case, the supplemental motion for a new trial, and the affidavits and oral

evidence introduced on the hearing thereof, are incorporated in a separate bill of exceptions, which is properly in the record. There is no error in the action of the court in entertaining appellant's supplemental motion, of which the State can be heard to complain.

Having now disposed of the State's objections to the record of this cause, we pass to the consideration of the appellant's case, as the same is presented in the transcript before us, upon the evidence introduced as well after as before final judgment.

James McMullen and his wife, in the early part of January, 1885, were the only occupants of a small farm-house of two rooms, remote from any city, town or village, in the county of Montgomery. Early in the morning of the 8th day of January, 1885, it was discovered that, during the preceding night, this farm-house had been consumed by fire. In the ashes and embers of the burned house, there were found in the east room the skeleton and remains of James McMullen, and the skeleton and remains of his wife in the west room. The indications were that both of them had been murdered, McMullen before he had prepared to retire for the night, and his wife after she had disrobed herself of outside garments preparatory to her retiring, and that the house had been partially robbed of its contents before it had been set on fire. Of course, the entire neighborhood was at once aroused, and steps were promptly taken to discover the perpetrator of the atrocious crime. Almost immediately, suspicion pointed to John W. Coffey, the co-defendant of the appellant in the indictment in this case, as a guilty actor in the murder of the McMullens, and in the felonious burning of their little home. Coffey was promptly arrested, and as promptly confessed that he, and he alone, was guilty of the murder of the McMullens, and that he, and he alone, had committed the bodies of his murdered victims to the flames, by setting on fire their dwelling-house.

Within a week after the murder of the McMullens, at the coroner's inquest upon their remains, Coffey was examined

under oath, as a witness, by and before the coroner of Montgomery county. His testimony was reduced to writing, in a narrative form; and, " after it was written, it was read over to him, and he was asked if that was correct, and he said it was. He was asked if there was anything more he wished to say, and he said not that he knew of." Coffey then subscribed his name, in his own proper hand, to the written narrative of his testimony as taken by the coroner. This written narrative of Coffey's testimony was offered by appellant and admitted in evidence, without objection by the State, on the trial of this cause, and is properly in the record. This written narrative may properly be called Coffey's first confession, made within four days after the murder of the McMullens, when, it may be supposed, every act and circumstance of the horrible crime were fresh in his recollection. The narrative is entirely too long to be copied in this opinion, but we may say generally that it gives in detail every particular of the double murder he had committed, of his search for money and other plunder, and of his setting fire to the house wherein were the bodies of the murdered McMullens. In this narrative Coffey says: " No one was connected with me in the affair. I was alone, and no one knew my intentions. When I left John Fritz's house in the evening, I went on purpose to McMullens' to do what I did. It came on me all of a sudden at Fritz's house. My purpose was to get money."

When Coffey made this confession before the coroner, and it became generally known, there were many persons who believed, or professed to believe, that he alone did not commit the murder of the McMullens, but that he must have had accomplices, or have been aided and abetted by others in the commission of the crime. This is abundantly shown by Coffey's own testimony on the trial of this cause. These persons diligently pressed Coffey to make a further confession, and to tell who helped him in the commission of the crime, and suggestions were made to him of this one or that one, and,

among others, of Dennis, the appellant, with inquiries as to whether or not the person named was not with him when the crimes were committed. All this was done notwithstanding the fact that in his testimony before the coroner Coffey had solemnly declared, under the sanction of his oath, that no one was connected with him in the affair, and that he was alone, and no one knew his intentions. Under such pressure, and with such suggestions, Coffey yielded in about ten days, and made what is called his second confession, implicating the appellant, Dennis, and making him the principal in the murders and arson committed, while Coffey, himself, is made to play only a secondary part in the terrible tragedy.

After this second confession was made by Coffey, the indictment was returned in this case against him and the appellant jointly. As we have seen, the appellant, Dennis, was awarded a separate trial, and, upon such trial, a verdict was returned finding him guilty of murder in the first degree, and assessing his punishment at death, and judgment was rendered accordingly. It is insisted very earnestly by appellant's counsel, that the verdict of the jury is not sustained by the evidence; but, in the view we take of this case, it is not necessary for us to consider or decide this question. On the trial, the principal witness for the State and against appellant was John W. Coffey, who testified in the main in accordance with his second confession, that he and appellant committed the murders of the McMullens and the arson of their home, but that appellant was the instigator and principal actor in the commission of the crimes, while he, Coffey, was chiefly a passive looker-on. It is to be observed that Coffey is the only witness who claims or admits that he has any personal knowledge of the commission of the murders of the McMullens. From our examination of the record before us, we feel justified in saying that the verdict of guilty against appellant is, and must be, rested on the evidence of John W. Coffey, and that if Coffey's evidence be eliminated or obliterated from

the record, there is no case left against the appellant for the murder of James McMullen.

This brings us to the consideration of the supplemental motion of the appellant for a new trial, and of the evidence introduced upon the hearing of that motion. This evidence chiefly consists of what may be termed the third confession of John W. Coffey. This confession, in its details, is widely different from either of his previous confessions, and from his evidence given before the court and jury on the trial of this cause. In this third confession he says, in substance, that there were five persons in all who went to the home of the McMullens for the purposes of robbery and murder on the night of January 7th, 1885, namely, himself and appellant, Dennis, Monday Rankin, John Curtis and the old man Rankin; that when they got to the house, he, Coffey, stood at the gate and kept watch; that old man Rankin killed the McMullens by four shots from a navy revolver; that after the McMullens were thus killed, they all joined in searching the house, old man Rankin finding $300 in an old trunk; that they bundled up feather beds and clothes in three bundles, which they carried away with them; and that, afterwards, Monday Rankin and John Curtis returned to the house and set it on fire. There is more of this third confession, but we have set out enough of it to show its utter inconsistency with the previous confessions of Coffey, and with his testimony on the trial of this cause. The evidence in regard to his third confession is uncontradicted by any testimony offered by the State.

It is claimed, however, on behalf of the State, that the evidence of the third confession is either cumulative or impeaching, and that, for evidence of either kind, the rule is that a new trial will not be granted. Doubtless, the rule of practice is correctly stated. But the evidence we are now considering is not cumulative in any proper sense, because its tendency will be to obliterate or destroy the previous evidence of John W. Coffey. The evidence of the third con-

fession is something more than impeaching evidence, because, if believed by the jury, its tendency will be to defeat a verdict for the State on the indictment in this case. The materiality of the evidence of the third confession can not be doubted or denied, and it is impossible for the courts to tell how this third confession, in connection with Coffey's previous confessions, might affect the jury; and, in such a case, we understand the rule to be that a new trial should always be granted. Especially should this rule prevail in our State, where, by the fundamental law, it is expressly declared that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Section 64, R. S. 1881. 3 Graham & Wat. New Trials, pp. 1043 and 1044; *Lindley* v. *State*, 11 Tex. Ct. App. 283; *Green* v. *State*, 17 Fla. 669.

By his third confession Coffey says, in substance and effect, that he had perjured himself in each of his previous confessions and in his testimony on the trial of this cause. We are met, therefore, with this question, Ought we to permit the appellant, who has been convicted upon confessedly false and perjured testimony, to suffer the extreme penalty of death? With a just sense, we hope, of our official duty, we answer this question in the negative.

The court erred, we think, in overruling the supplemental motion for a new trial.

The judgment is reversed, and the cause remanded, with instructions to sustain the supplemental motion for a new trial.

Filed Sept. 26, 1885.