The State v. Keleher.

THE STATE OF KANSAS. V. CHARLES KELEHER.

No. 14,904.   (87 Pac. 738.)

SYLLABUS BY THE COURT.

1. MURDER—*Conspiracy—Requisite Proof.*  To render one who is not present and does not aid or assist in a murder guilty thereof by reason of a former conspiracy with the slayer, it must appear that the murder was within the contemplation of the conspiracy or was the natural and probable outcome thereof.

2. ———— *Probable Result—Conspiracy Not Proved.*  A conspiracy to steal money from a barn, where it was supposed to be hidden, is not such a conspiracy as would naturally and probably result in the murder of the owner of the money at a place entirely· remote from the barn and under circumstances in no way connected with obtaining the money from the barn.

3. ———— *Erroneous Instruction—Absent Conspirator.*  In such a case, and in the absence of evidence showing .any connection · between the conspiracy and the murder, except that the murder was for the purpose on the part of the slayer of obtaining the money, it is error to instruct the jury that they may find the absent conspirator guilty of the murder if they find the murder was the natural and probable outcome of the conspiracy.

4. CRIMINAL LAW — *New Trial — Newly Discovered Evidence.*  Section 5652 of the General Statutes of 1901 extends the provision of the civil code (Gen. Stat. 1901, § 4754) relating to new trials on the ground of newly discovered evidence to

criminal procedure, although a new trial on this ground is not authorized by the express provisions of section 5713, providing the grounds upon which a new trial in criminal cases may be granted.

5. ———— *Sufficient Showing for a New Trial.* When an application for a new trial in a criminal case is made on this ground, and it conclusively appears that the new evidence is in fact newly discovered, that it is material for the party applying, and could not with reasonable diligence have been discovered and produced on the trial, and that the effect of the evidence is doubtful or impossible to determine, a new trial should be granted.

Appeal from Graham district court; CHARLES W. SMITH, judge. Opinion filed November 10, 1906. Reversed.

*C. C. Coleman,* attorney-general, *John S. Dawson,* assistant attorney-general, and *H. J. Harwi,* county attorney, for The State; *Garver & Larimer,* of counsel.

*David Ritchie, M. A. Chambers, F. D. Turck,* and *George W. Jones,* for appellant.

The opinion of the court was delivered by

SMITH, J.: The appellant was tried, convicted and sentenced for murder in the second degree for the killing of Charles Wetzel in Graham county, and appeals to this court. In attacking the proceedings of the trial court numerous errors are assigned, but the questions raised may all be considered under the following heads: (1) The sufficiency of the information as embracing the charge of murder in the second degree; (2) the sufficiency of the evidence, and variance therein; (3) the instructions given and refused; and (4) the rulings on the motions in arrest of judgment and for a new trial. The charging part of the information in this case reads as follows:

"That on or about the 15th day of November, A. D. 1905, in said county of Graham and state of Kansas, one Charles Keleher did then and there unlawfully, feloniously, wilfully, deliberately, premeditatedly, and

of his malice aforethought, kill and murder one Charles Wetzel, then and there being, by striking him, the said Charles Wetzel, on the head with a deadly weapon, the same being a singletree, or other blunt instrument; a better description of said deadly weapon the plaintiff is unable to give. The said deadly weapon, he, the said Charles Keleher, then and there in his hands had and held. And so the state of Kansas, plaintiff, says that at the time aforesaid and by the means aforesaid and in the manner aforesaid he, the said Charles Keleher, did unlawfully, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, kill and murder Charles Wetzel, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

The statute defining murder in the first degree reads as follows:

"Every murder which shall be committed by means of poison or by lying in wait, or by any kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration [of?] or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree." (Comp. Laws 1862, ch. 33, § 1; Gen. Stat. 1901, § 1991.)

The section defining murder in the second degree reads:

"Every murder which shall be committed purposely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree." (Gen. Stat. 1901, § 1992.)

It is contended by appellant that under the statutory definition of murder in the first degree there are four different kinds of murder provided for. The brief reads:

"In other words, murder in the first degree may be committed in four different ways: First, by means of poison; second, by lying in wait; third, by any *other* kind of wilful, deliberate and premeditated killing; fourth, when the killing is committed in the perpetration or attempt to perpetrate some other felony. We take it from the reading of this statute that in the first

three ways in which murder may be committed as defined by this statute the wilful intent to kill is one of the essential ingredients, and in order to convict a defendant of murder in any one of these three ways the wilful, deliberate and premeditated intent to kill must be alleged and proven.

"Under the fourth provision of this statute it may not be necessary to prove any intent to kill, and an information might be good and might be sustained by proof which was entirely wanting in either allegation or proof upon any intent of the defendant to kill the deceased. . . . Under this statute [referring to the statute defining murder in the second degree] the intent or purpose with which the act is done by which the life of the deceased may be destroyed is made an essential ingredient of the offense charged, and in order to convict of murder in the second degree the purpose or intention with which the act that results in the death of the deceased is done must be alleged and proven, and such is the law as declared by this court. [Citing *The State v. Young*, 55 Kan. 349, 40 Pac. 659.]"

The argument is quite ingenious and interesting, but is not consistent with the authorities nor with itself. By implication it makes murder in the second degree a greater crime than the "fourth" kind of murder in the first degree, in that it is said that under this "fourth" kind an information might be sustained that was wanting in allegation or proof of any intent of the defendant to kill the deceased. So far as the language of the statute is concerned this might with equal reason be said of murders committed by means of poison or by lying in wait. The language employed in the statute to define murder in the first degree is generations old and had a well-settled meaning long before it was adopted in this state. It was adopted in the state of Pennsylvania in 1794. The settled meaning is uniformly held to be that to constitute the first degree of the crime the homicide must be committed wilfully, deliberately and premeditatedly, but it is not necessary to constitute the crime that death should be the wilful, deliberate and premeditated purpose and object of the

act which constitutes the crime.   It was said as early
as 1813, by Mr. Chief Justice Tilghman, in *White v.
Commonwealth*, 6 Binn. (Pa.) 179, 6 Am. Dec. 443:

"In an indictment for murder, it is not necessary so
to describe the offense as to shew whether it be murder
of the first or second degree.   .   .   .   It has not been
the practice, since the passing of this law [which in
defining murder in the first degree is identical with our
statute, except that the words "or other felonies" are
omitted], to alter the form of indictments for murder
in any respect.   .   .   .   It seems to be taken for
granted that it would not always appear on the face of
the indictment of what degree the murder was, because
*the jury are to ascertain the degree,* by their verdict."
(Pages 179, 183.  See, also, *Commonwealth v. Flana-
gan,* 7 W. & S. [Pa.] 415, decided in 1844.)

At the common law it was not essential to allege or
prove the specific intention to kill, if the act from which
death ensued was *malum in se* or done with a design to
commit a felony.  (1 Whart. Crim. Law, 10th ed., § 120;
2 Bish. Crim. Law, 7th ed., § 694.)  Our statute defining
murder in the first degree is identical with the Mis-
souri statute, from which it was probably taken, and
the same doctrine is there maintained as in Pennsyl-
vania.  (*The State v. Meyers,* 99 Mo. 113, 12 S. W. 516;
*State v. Foster,* 136 Mo. 653, 38 S. W. 721.)  Proof that
a homicide was committed in the perpetration of a
felony is held tantamount to the premeditation and de-
liberation which otherwise would be necessary to con-
stitute murder in the first degree.

The only essential difference between murder in the
first degree and murder in the second degree is that
the former is committed after deliberation and pre-
meditation, which elements do not inhere in the lower
grade of the crime; but all the elements of murder in
the second degree are included in the statutory defini-
tion of murder in the first degree.  It is inconceivable
that a person could premeditate the killing of another
and deliberately proceed to consummate the act with-
out purposely and maliciously committing the murder.

While the intent to kill or to do the wrongful act which results in the death is an essential element in the second degree of murder, it is not necessary specifically to allege or prove such element. It is included in the charge of murder in the first degree. As to the proof, the intent may be inferred from the accomplished fact of the killing and the manner in which it was done. It is said in volume 1 of Bouvier's Law Dictionary (subject, "Intention") :

"When by the common law, or by the provision of a statute, a particular intention is essential to an offense, or a criminal act is attempted but not accomplished, and the evil intent only can be punished, it is necessary to allege the intent with distinctness and precision, and to support the allegations with proof. On the other hand, if the offense does not rest merely in tendency, or in an attempt to do a certain act with a wicked purpose, but consists in doing an unlawful or criminal act, the evil intention will be presumed, and need not be alleged, or, if alleged, it is a mere formal averment, which need not be proved. Bigelow, C. J., 2 Allen, 180; 1 Chitty, Crim. Law, 233; 6 East, 474; 5 Cush. 306, 52 Am. Dec. 711; 153 U. S. 608, 14 Sup. Ct. 939, 38 L. Ed. 839; 93 N. C. 516."

Every case in this court (and there have been many) in which a conviction of murder in the second degree has been sustained although the crime charged was murder in the first degree and the information did not specifically charge that the murder was "committed purposely and maliciously" is, in effect, an affirmation of the doctrine announced in Bouvier, *supra.* The language used in *The State v. Young,* 55 Kan. 349, 40 Pac. 659, seems to support the contention of the appellant, but a reading of the case shows that the question here involved was not in that case. The information did not formally charge murder in either degree, but charged that the act that caused the death was done with a specific intent to consummate a wrongful act which was not denounced as a felony, nor as any crime, by any valid statute of the state. The information in

this case sufficiently charges the crime of murder in the second degree as well as in the first degree. (*The State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *The State v. Terreso,* 56 Kan. 126, 128, 42 Pac. 354; *Craft v. The State of Kansas,* 3 Kan. 450; *The State v. Smith,* 38 Kan. 194, 16 Pac. 254.)

The foregoing remarks apply also, in a measure, to the instructions to which objection is made and to the alleged variance between the allegations of the information and the proof. It is contended that the court erred in its instruction No. 22, relating to conspiracy to commit crime. There was evidence tending to show a conspiracy between the defendant, Keleher, and Roberts, who did the killing, to steal Wetzel's money from a barn where it was supposed to be hidden. There was also evidence of a conspiracy to get Wetzel to take a trip with them on the cars and rob him of the money. After instructing correctly as to the conspiracy to rob, the court said:

"If, however, you do not so find, but do find by the evidence, beyond a reasonable doubt, that they conspired to steal Wetzel's money but not to take it from his person by violence, and that in furtherance of such common design and in carrying out such common purpose Roberts killed Wetzel, the defendant if absent would be guilty only in case such killing was the natural and probable outcome of the execution of such common design."

This portion of the instruction is a complete proposition in itself, and is not modified by any other portion of this instruction or by any other instruction, and it is erroneous. The killing of a man at a place far removed from where his money was supposed to be hidden, by one of two conspirators who planned to steal his money in his absence from a barn where it was supposed to be hidden, cannot be the natural and probable outcome of the conspiracy to steal. It is true that, when one has the consent of his own mind to obtain money by stealing it, it is but a step further to obtain

it by robbery, and but another step to obtain it by murder; but the law does not impose upon a conspirator who joins only in the plan to steal any responsibility for these descending steps of his associate. The conspirator is responsible only for such acts of his associate as are the natural and probable outcome of their agreement, as the court elsewhere well told the jury. It was error for the court to instruct that they might determine whether the killing was the natural and probable outcome of the conspiracy to steal when there was no evidence to justify such conclusion but on the other hand all of the evidence and circumstances connected with the killing showed a complete abandonment of their plan, which involved not even an assault, much less a murder, and the adoption of another and independent plan to obtain the money. (*The State v. Furney*, 41 Kan. 115, 21 Pac. 213, 13 Am. St. Rep. 262.) We have examined all the instructions and find that otherwise they fairly presented the law applicable to the case.

While from their evidence, as it appears in the record, we might conclude differently than did the court as to the qualifications of some of the jurors, we are not in an equal position to determine this question and cannot say that the record shows error in overruling the challenges for cause or in not considering as sufficient grounds for a new trial the remarks attributed to certain of the jurors out of court.

The only remaining question which we consider it necessary to discuss is the denial of the appellant's amended motion for a new trial. On the trial of the appellant, who had been arrested and charged with the murder on the strength of a confession made by Leland Roberts, who at all times admitted that he alone dealt the blows which caused the death of Wetzel, Roberts was the only witness who testified to any conspiracy between himself and Keleher to obtain Wetzel's money in any manner, and the only witness to testify to the

presence of Keleher at the time of the killing or in any way to connect Keleher therewith. There were other witnesses who testified to the association of Keleher with Roberts and Wetzel shortly before the killing, and there were witnesses whose evidence tended to establish an alibi for Keleher at the time of the killing of Wetzel. At the trial Roberts testified to an agreement between himself and Keleher to get Wetzel to go with them and steal a ride in box cars to Kansas City and on the way to get Wetzel drunk or to catch him asleep and take his money from his person; that in pursuance of the plan they had obtained Wetzel's consent to go with them, and the three had started down the railroad-track from the depot in Hill City, intending to board a freight-train which was about due to arrive from the west; that as they were walking along the railroad-track Roberts picked up a singletree of a wagon, and, Wetzel having sat down for some purpose, Roberts struck him repeated blows on the head with the singletree and killed him; that Keleher took no part in the killing, but was present and immediately thereafter helped dispose of the body and received part of the money taken from the clothing upon it.

On this evidence, after the instructions had been given and arguments of counsel had been made, the case was submitted to the jury and a verdict of guilty of murder in the second degree was returned. Thereafter, in due time, motions in arrest of judgment and for a new trial were filed by the defendant, and, pending the hearing of the decision of the motion for a new trial, Leland Roberts was arraigned on the information for the murder of Wetzel, which had been filed against him, and pleaded guilty to murder in the second degree, which plea was accepted by the court on the consent of the county attorney. Thereupon Roberts was asked by the court if he had any legal excuse to offer why judgment should not be pronounced against him. In reply he said he wished to make a statement, and, hav-

ing the permission of the court so to do, he proceeded to detail the circumstances of the murder and declared in substance that Keleher had nothing to do with it; that Keleher was not present at the time of the killing, did not aid in disposing of the body, did not receive any of the money, and did not conspire with him (Roberts) to rob Wetzel or to steal his money.

Thereafter the attorneys for appellant filed a supplemental motion for a new trial on the ground of newly discovered evidence, the court granted a hearing thereon, and a number of witnesses were orally examined in court. Several witnesses testified that Roberts had stated to them, in substance, that Keleher had nothing to do with the murder, and Leland Roberts repeated under oath substantially the statements he had made to the court on his arraignment. The record of the action of the court after the evidence on the motion was concluded is as follows:

"And thereupon after due consideration the said motion for a new trial is by the court overruled, the court holding that the evidence is insufficient to prove that the defendant was present at the time and place of the killing of the deceased and participated in the act of killing, but holding that it is sufficient to prove him guilty as accessory before the fact, and as a conspirator under the law.

"To the ruling of the court in sustaining the verdict and in overruling the motion for a new trial the defendant at the time duly excepted."

The instructions permitted the jury to find Keleher guilty, first, if they found he was present at the killing and aided or abetted Roberts therein; second, if they found that Keleher and Roberts conspired to rob Wetzel before the killing; and, third, if they found that Keleher and Roberts, before the killing, conspired to steal Wetzel's money from the barn and that the murder of Wetzel was the natural and probable result of this conspiracy. We have found as a proposition of law that the murder could not have been the natural or probable

result of the conspiracy to steal the money from the barn. In the absence of any connecting link the murder could not have resulted from such an agreement. It involved a new and independent plan for getting the money.

There remain, then, only two facts upon the finding of which against the appellant he should have been held responsible and found guilty of the murder: (1) The conspiracy to rob; (2) the presence of the appellant, aiding and abetting in the murder. The court, after hearing the evidence on the motion for a new trial, found that the evidence did not sufficiently establish the fact that appellant was present, aiding and abetting, at the time of the murder, but was sufficient to prove him guilty as a conspirator. It cannot be said which or how ,many of the three facts· that the court submitted to the jury as severally the basis of a conviction they found against the appellant, and it cannot be said which of the two conspiracies the court, after hearing the evidence on the motion for a new trial, found to be sufficiently proven by the evidence. Nor can it be said that the jury would have agreed with the court if they had heard the evidence of Roberts on the motion. The jury, it may be presumed, were justified in finding the appellant guilty of murder upon two of the three basic questions of fact which the court properly submitted to them, although upon the uncorroborated testimony of a confessed murderer, but they might have hesitated before saying that guilt was established beyond a reasonable doubt when the self-confessed murderer became a self-confessed perjurer and swore that the evidence upon which the jury had relied and had found appellant guilty was false *in toto*.

Except when an accused pleads guilty of the crime charged, it is the theory of the law that he can be punished only upon the unanimous verdict of twelve qualified jurors and the approval of the verdict by the trial

41—74 KAN.

court. Can it be said that this verdict was approved by the court?

We have found that the court misdirected the jury in a material matter of law, viz., the conspiracy to steal, and this is a statutory ground for granting a new trial. We shall not, however, rest our decision on this alone. "Newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial," is not among the grounds for a new trial authorized by the statute relating to criminal procedure (Gen. Stat. 1901, § 5713), although it is a provision of the civil code (Gen. Stat. 1901, § 4754). Section 5652, however, seems to extend this provision to criminal procedure. (*The State v. Bogue*, 52 Kan. 79, 34 Pac. 410.) From the evidence adduced on the hearing of the motion and all that had occurred in the presence of the court it seems to have been conclusively established: (1) That the evidence was newly discovered; (2) that it was very material to the party applying; and (3) that no amount of diligence would have led to its discovery or enabled him to produce it at the trial. Indeed almost the whole of this long trial was devoted to the discovery of what this one witness knew—the facts about the murder of Charles Wetzel. He is perhaps the only person in the whole world who knows the truth. After he had been examined and cross-examined at great length—after the court had instructed the jury with great care and general accuracy, and eminent counsel with nice acumen had argued to the jury what the circumstances had disclosed and what they should believe to be the truth—after the jury had reexamined all that had passed before them and had pronounced their verdict of guilty—after the trial was all finished—this witness, with his great burden of guilty knowledge, voluntarily, as he said, came back and in the presence of the court where he had reiterated his story swore that it was all a fabrication and was false, that the ver-

dict was false, and that an innocent young man had been wrongfully convicted of the horrible crime of murdering a young associate for money. Two motives are assigned by the witness for giving the testimony which he finally says is false, and they are such as might actuate one so depraved. When he faced his own conviction he claims to have had an awakening of his dormant sense of justice and to have become possessed of a desire to undo the great wrong he swears he had committed to an innocent man. If Roberts's later statement be true, the appellant should be acquitted; if the former be true, he should be condemned.

To determine the credibility of witnesses and all the facts, including the final conclusion of guilt or innocence, are the especial provinces of a jury and not of a court. The court evidently believed a part of the testimony given by Roberts on the motion for a new trial, which was in direct contradiction of his evidence on the trial. If the jury had heard this additional testimony they might have determined its credibilty the same as did the court, or they might have believed the entire statement made by Roberts at the last and entirely discarded his story told on the trial. A jury should have the opportunity to hear all of this testimony and to determine what should be believed. Where the probable effect of the newly discovered evidence is doubtful or impossible to determine, a new trial should be granted. (*Dennis v. The State,* 103 Ind. 142, 2 N. E. 349; 14 Encyc. Pl. & Pr. 842; *Lindley v. The State,* 11 Tex. App. 283.) The newly discovered evidence in this case is not cumulative, and is not simply for impeachment. If believed, it entirely obliterates the evidence of the witness upon which the conviction evidently was based.

The judgment is reversed, and a new trial is granted.

All the Justices concurring.