No. 30,699.

The State of Kansas, *Appellee*, v. Orrie Alcorn, *Appellant*.

(16 P. 2d 479.)

Opinion filed December 10, 1932.

*Elmer E. Euwer*, of Goodland, *C. L. Kagey, Leon W. Lundblade* and *L. M. Kagey*, all of Beloit, for the appellant.

*Roland Boynton*, attorney-general, *Thomas E. Stewart*, county attorney, *J. E. Addington* and *Howard A. Jones*, both of Topeka, for the appellee.

The opinion of the court was delivered by

Sloan, J.: The defendant was convicted of grand larceny, from which conviction he appeals.

The appellant, William Walker and Barney Huffman, on and prior to September 3, 1930, lived in Goodland. The appellant assisted his father in running a filling station and in operating trucks which were used in hauling live stock and grain for farmers. On the night of September 3 the appellant, William Walker and Barney Huffman took 200 bushels of wheat belonging to Wilmot Price and delivered the same at the home of Nels Heavener. It appears that Walker operated a hardware store in Goodland and was also engaged in farming with Nels Heavener. The taking of the wheat and the value thereof was admitted. Walker and Huffman entered a plea of guilty, and the state relied upon their testimony for a conviction of the appellant. The appellant admitted that he hauled the wheat, contending that he did not know the wheat was being stolen and was in no way a party to the theft, believing that Walker had the right to direct the taking and delivery of the wheat. On cross-examination the appellant said:

"While we were out there I got suspicious the wheat was being stolen.
"A. Yes, it entered my head that is what was going on.
"Q. Now, if that was true, why didn't you throw the shovel down and quit

and say, 'Bill, let's quit'? A. It wasn't any business of mine. I was getting paid for hauling it.

"Q. You were getting paid for hauling stolen wheat? A. I didn't know it was stolen wheat.

"Q. But you had that suspicion? A. I expected it was.

. . . . . . . . . . . . . . . . .

"Q. But you testified originally you did have a suspicion that wheat was being stolen? A. Yes, I expected it.

"Q. And you never reported it, or anything, or quit? A. Why, no; I went ahead and loaded up my load and brought it where they said to."

The appellant was convicted. The case is properly here for review.

The appellant contends that the court erred in permitting the state to offer improper evidence in its direct testimony. The witness, Walker, testified that he was engaged in the implement business in the city of Goodland and was in partnership with Nels Heavener in operating a farm some distance from Goodland; that on the afternoon of September 3, 1930, the appellant came to his office where the following took place:

"Mr. Alcorn approached me about 4 or 4:30 in the evening in regard to taking this grain, and he said he talked to Barney Huffman about this, and asked me if I would go out with him and take my truck. I told him I wouldn't at the time, and he stayed up there till 6 or 6:30, and I consented to go out there with him. . . . He said he knew where there were several thousand bushels of barley out in the country, and asked if I would go with him and take my truck to steal it. I told him I wouldn't at the time, and he stayed around there until Barney came. I imagine Barney came about 4:30 or 5 o'clock in the afternoon. He argued with Barney then and we talked it over together, and it wasn't until 6:30 or 7 o'clock I finally decided to go out. My truck was in the country and it came back about 7:30 or 8 o'clock in the evening."

He was cross-examined concerning this conversation and on redirect examination the following questions were asked and answers given:

"Q. Did he have any whisky along with him at the time he came up there to see you?

"Mr. KAGEY: Now, if the court please, we object to this for several reasons. In the first place, as not redirect; and in the second place, it would not tend to prove or disprove any facts in this case.

"Mr. STEWART: I think it is direct examination—redirect.

"Mr. KAGEY: It is not redirect.

"THE COURT: The objection is overruled. You may answer the question.

"A. Yes, sir.

"Q. (By Mr. STEWART.) And did you take a drink with Orrie Alcorn at that time? A. That afternoon.

"Mr. Kagey: We object for the same reason.

"The Court: Same ruling.

"Q. (By Mr. Stewart.) What was your answer? A. Yes, sir.

"Q. (By Mr. Stewart.) What did you do after you had taken a drink or two with Mr. Alcorn while he was there? A. I took the drink with him down at Kelly's confectionery. Went back to my office and stayed there until closing time and I went home and ate dinner that night, and I left my hired man there at the office and I came back about 7 o'clock."

The appellant insists that it was error to admit the evidence of another offense. He contends that this does not come within the rule announced and followed by this court that testimony of offenses of a similar nature and character to that charged in the information may, under certain circumstances, be admitted to show inclination, tendency, attitude, intent and identification of the defendant. (*State v. Stitz*, 111 Kan. 275, 206 Pac. 910; *State v. Hendren*, 127 Kan. 497, 274 Pac. 274; *State v. Frizzell*, 132 Kan. 261, 295 Pac. 658; *State v. Caton*, 134 Kan. 128, 4 P. 2d 677.) This rule, however, is not applicable to the testimony here under consideration. It appears, according to the theory of the state, that the witness, the appellant and Huffman met about 4 o'clock on the afternoon of September 3 and planned the crime. In the course of the conversation preparatory to the commission of the crime the parties indulged in a drink of intoxicating liquors. Huffman testified, without objection, that he drove up to Walker's place of business and that "we went down to Kelly's and had a drink." The drinking was indulged in during the time the parties were planning the offense and it has been repeatedly held by this court that competent testimony relating to the offense charged is admissible in evidence although it tends to prove the commission of another and independent crime. (*State v. Baker*, 125 Kan. 173, 263 Pac. 1059, and cases there cited.) The evidence objected to was competent. It was proper to show the relation between the parties in planning the crime, and the fact that another crime is proven does not render the evidence incompetent. The objection was properly overruled.

It is next contended that the court erred in overruling appellant's motion for a new trial. In the trial of the case the witness Walker testified, in substance, that the appellant approached him about 4 o'clock in the afternoon and asked his assistance in the stealing of wheat and barley. The witness Huffman testified that he met the appellant and Walker about 4 o'clock in the afternoon; that they had a drink and the appellant suggested that they drive out into the

country. They drove north about ten miles and then turned east, and, during the course of this drive, the appellant brought up the subject of stealing wheat and barley; that they left town about 4:30 and returned about 6 o'clock. They started from town to steal the wheat about 7:30 in the evening. The appellant testified that on the afternoon of September 3 he went out to the fairgrounds between 1:30 and 2 o'clock and was there until 4:30 or 5 o'clock; that about that time he went with his brother into the country with a load of hogs; that they returned to the Rock Island stockyards and washed out the truck; that he then returned to the filling station. His father told him that Walker had been down to see him and wanted to know if he would haul a load of wheat for him that night. He afterwards saw Walker and the arrangement was made to haul the wheat. On the motion for a new trial the testimony of C. M. Harding was offered to the effect that William Walker was at his place about a mile west of Goodland on the afternoon of September 3 helping to set up a drill; that he left his place and returned to town between 2 and 3 o'clock and returned about 4:30 and went back to town at 4 or 5 o'clock. Nels Heavener, who was at Harding's place on the afternoon of September 3, testified that Walker left Harding's place about 3 o'clock, returned about 4 o'clock and was there until 5 o'clock, when he returned to town. The appellant testified that he had no knowledge of this testimony until after the trial of the case. The court, in ruling on the motion for a new trial, said:

"If this evidence has been shown to be newly discovered evidence, which it probably has not been, as that term is interpreted, it is at most but an accumulation of immaterial facts. That is to say, the facts that this question goes to is not a material fact as going to the principal ingredients of the crime charged. It is introduced, the court assumes, for the purpose of disproving the statement of young Barney Huffman, largely at least, that this defendant and Barney Huffman went out about 12 or 14 miles northeast of this in the afternoon, and saw a pile of barley. It is offered for the purpose of disproving the statement, that of William Walker, that Barney Huffman was with him at a certain—at certain times in the afternoon before this man was charged—the crime was committed. Introduced further, perhaps, for the purpose of strengthening the testimony that this defendant went down on the stockyards lot and washed his car, truck, at the watering place down here at the railroad station where the power was stronger than up at the filling station.

"Those matters do not go to the essential ingredients of the crime. Other evidence, similar to this, was introduced as to every other point that this testimony would go to. So that at most it can only be said to be cumulative. There is no material evidence claimed to have been omitted here after the showing of what the evidence is. The jury, very probably, would have reached

exactly the same result that it did reach if these witnesses had been here and testified."

The rule is well established that to entitle a defendant to a new trial on the ground of newly discovered evidence he must establish that there was no lack of diligence on his part to secure such evidence; that the evidence, if produced, was material to the issue and would probably change the result of the trial. (*State v. Humerickhouse,* 119 Kan. 490, 239 Pac. 1109.) In the case of *State v. Jella,* 132 Kan. 509, 296 Pac. 350, the court stated the rule as follows:

"The test as to the sufficiency of newly discovered evidence to entitle the defendant in a criminal case to a new trial is whether or not such evidence considered in connection with the evidence introduced on the trial would probably have changed the result or would probably on a new trial produce a different verdict." (Syl. ¶ 2.)

The majority of the court are of the opinion that the newly discovered evidence, while material, was insufficient when considered in connection with all the other evidence in the case to change the result. This is especially true in view of the appellant's admission on cross-examination that he had a suspicion when they were loading the wheat that it was being stolen. This admission on the part of the appellant was sufficient to warrant the jury in finding the appellant guilty, regardless of the truth or falsity of the testimony of the state's witnesses as to the meeting and conversations had between them and the appellant on the afternoon of September 3. It was his duty when his suspicions were aroused to refuse to proceed further with the loading of the wheat until the right of possession was satisfactorily explained to him. Suspicion, under the admitted facts in this case, was equivalent to knowledge.

The judgment of the district court is affirmed.

SLOAN, J. (dissenting): I am unable to concur in the conclusion reached by the majority of the court in the ruling of the trial court on the motion for a new trial. The appellant frankly admitted that he participated in the taking and hauling of the wheat. He was engaged in trucking as a business. He contended that he acted only in that capacity. Consequently the only issue in the case was whether he knew the wheat was being stolen. Proof of this knowledge rested on the testimony of the two accomplices who testified that the plan of stealing the wheat was formulated on the afternoon of September 3 between the hours of 3 and 6:30. The evidence on

the motion for a new trial clearly shows that the three parties could not have been together during all of this time; that Walker was, during this time, with the exception of one hour, at the home of Harding assisting in the setting up of a drill. This testimony cannot be reconciled by any stretch of the imagination with the testimony of the state. There is no testimony which tends in any way to dispute the evidence of the appellant that the evidence was newly discovered, and the court was not warranted in finding lack of diligence. The testimony, when measured by the rule adopted by this court in *State v. Jella,* supra, was sufficient to entitle the appellant to a new trial. The evidence is not cumulative and I am convinced that it would in all probability have changed the result of the trial. Under such circumstances it was error for the court to overrule the motion, and the appellant should be granted a new trial. (*State v. Tyson,* 56 Kan. 686, 44 Pac. 609; *State v. Keleher,* 74 Kan. 631, 87 Pac. 738; *State v. Mounkes,* 91 Kan. 653, 138 Pac. 410.)

I am authorized to say that Mr. Justice HARVEY concurs in this dissent.