STATE of Indiana, Appellant (Respondent Below),

v.

Gordon McCRANEY, Appellee (Petitioner Below).

No. 45S03–9908–PC–439.

Supreme Court of Indiana.

Nov. 19, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Lee A. Smith, Indianapolis, Indiana, Attorney for Appellee.

BOEHM, Justice.

In 1980 Gordon McCraney was convicted of voluntary manslaughter and two counts of felony murder. Fifteen years later, postconviction relief was granted and the convictions set aside based on newly discovered evidence. Although this largely factual determination of the postconviction court is to be reversed only upon a showing of clear error, the Court of Appeals found that the proffered evidence was not worthy of credit and reversed the postconviction court. We granted transfer and now affirm the judgment of the postconviction court.

### Factual and Procedural Background

On the evening of December 28, 1978, McCraney was driving a car occupied by Austin Mitchell, Benny Greenwade, Nathaniel McClure and Tony Walker. The car broke down near the home of Truly Vaughn, and Vaughn allowed the five young men into the house to get some water for the car's radiator. While inside the house, McClure stole Vaughn's shotgun and took it back to the car. Vaughn, armed with a handgun, confronted the young men over the missing shotgun, and Mitchell shot Vaughn with a .38 caliber handgun. Mitchell then took Vaughn's handgun and car keys, and ultimately his car. Within days of the incident Mitchell gave four statements to police. Not until the fourth of these did Mitchell refer to McCraney's involvement in the shooting.

Mitchell, McCraney and Greenwade were indicted for the murder and felony murder of Vaughn. The indictment also sought the death penalty against all three men, but the capital counts against McCraney were dismissed before trial. The capital counts remained against Mitchell, who pleaded guilty to murder in the hope of receiving consideration at sentencing. Mitchell testified at McCraney's trial that after he shot Vaughn, McCraney also shot

Vaughn with a .22 caliber handgun. Mitchell was cross-examined at length about his inconsistent accounts of McCraney's role in the killing.

The jury found McCraney guilty of voluntary manslaughter and two counts of felony murder. He was sentenced to forty years imprisonment. Five months later Mitchell filed an affidavit with the trial court. It stated that, before his fourth statement, a police officer told him "to place [McCraney] at the scene of the murder as the actual triggerman, because [Mitchell's] third statement isn't enough probable cause to have McCraney charged." On February 2, 1984, McCraney filed a petition for postconviction relief, alleging that his conviction was the result of perjured testimony. The petition was later amended to raise several other claims, including that Mitchell's recantation constituted "newly discovered evidence" that entitled him to a new trial.

After several changes of counsel and continuances, a hearing on the petition was held on November 17, 1995. Mitchell testified at the postconviction hearing that his trial testimony against McCraney had been false and that McCraney had in fact never fired any shots at Vaughn. The postconviction court entered findings of fact and conclusions of law denying relief on September 25, 1996. McCraney then filed a motion to correct error, which the postconviction court granted relying on both Mitchell's recantation and other evidence.[1]

The State appealed the grant of postconviction relief, contending that Mitchell's change of story did not meet the requirements for a new trial based on newly discovered evidence. The Court of Appeals agreed, and reversed the judgment of the postconviction court in a memorandum decision. McCraney petitioned for transfer, and this Court heard oral argument on June 10, 1999. After argument, we concluded that the postconviction court's findings were insufficient to permit appellate review and remanded this case to the postconviction court "for the purpose of preparing a report of findings of facts and conclusions of law specifically addressing the factors cited in *Fox*." The postconviction court then filed "Revised Findings of Fact and Conclusions of Law" on July 16, concluding that Mitchell's recantation met the nine requirements for a new trial based on newly discovered evidence set forth in *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind.1991).

## Standard of Review

McCraney bore the burden in the postconviction court of establishing the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Our review of a judgment granting postconviction relief is governed by Indiana Trial Rule 52(A), which provides in relevant part that the trial court's findings

---

1. The other evidence related to the type of slugs found in Vaughn's house. During the trial, after Mitchell testified that McCraney had shot Vaughn with a .22 caliber handgun, the prosecutor asked police officers to return to Vaughn's house to look for additional evidence. The officers found two .22 caliber slugs in the wall of Vaughn's house. Although the trial court sustained McCraney's motion to exclude this evidence, a police officer was permitted to testify that he found two small holes in the kitchen wall which could have been made by .22 caliber bullets. In granting McCraney's motion to correct error, the postconviction court concluded "[t]he fact that the bullet recovered from the scene could only have been fired from a long gun, not a handgun, is newly discovered evidence, and together with [Mitchell's] recantation of his testimony would likely have led to a different result if presented at trial." However, as the Court of Appeals correctly pointed out, McCraney's amended petition for postconviction relief did not suggest that the ballistics report was newly discovered evidence but rather contended that trial counsel was ineffective for failing to enter the report into evidence. The State contends, without supporting evidence of record, this is a red herring because the same .22 slug could have been fired from either a rifle or a pistol. In any event, as explained below, the postconviction court later entered detailed findings basing its grant of relief solely on Mitchell's recantation. Accordingly, we do not address the ballistics report.

and judgment shall not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." As to factual determinations "[w]e reverse only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *State v. Moore,* 678 N.E.2d 1258, 1261 (Ind.1997) (quoting *State v. Van Cleave,* 674 N.E.2d 1293, 1295 (Ind.1996), *reh'g granted in part,* 681 N.E.2d 181 (Ind. 1997)). Review for "clear error" requires an "appellate court to assess whether 'there is *any* way the trial court could have reached its decision.'" *Moore,* 678 N.E.2d at 1261 (quoting *Spranger v. State,* 650 N.E.2d 1117, 1120 (Ind.1995)). In this review, we defer substantially to findings of fact but not to conclusions of law. *See Moore,* 678 N.E.2d at 1261.

### Newly Discovered Evidence

█ To be entitled to a new trial based on newly discovered evidence, a claimant must establish that: (1) the evidence was not available at trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result. *Fox v. State,* 568 N.E.2d 1006, 1007 (Ind.1991). The State contends that Mitchell's recantation does not meet criteria one, three, four, seven and nine. The Court of Appeals addressed only the seventh, concluding that Mitchell's recantation was not worthy of credit. We conclude that the Court of Appeals gave insufficient deference to the factual findings of the postconviction court and accordingly affirm the postconviction court.

█ The State first asserts that Mitchell's post-trial recantation is not newly discovered evidence because it was "available and even presented at trial." The State is correct that Mitchell had given several different statements before trial and that McCraney cross-examined him extensively about the changed stories at trial. However, at trial Mitchell testified that McCraney shot Vaughn with a .22 caliber handgun. The proffered newly discovered evidence, Mitchell's statement that he lied at trial and that McCraney was not in fact involved in the shooting, was not and could not have been known at the time of trial. We agree with the postconviction court that Mitchell's recantation was discovered after trial.

We also agree with the postconviction court that Mitchell's recantation is not cumulative. The State asserts that because "the jury was repeatedly informed that Mitchell had told different versions of the event ..., another recantation would be cumulative to the evidence presented at trial." As explained above, the recantation came after the trial, was never made known to the jury, and was qualitatively different from the earlier versions. As such it is not cumulative as to any of the earlier testimony.

Nor is it merely impeaching. The State's only contention as to this factor is that Mitchell's recantation "would only serve to impeach [his] credibility in the event of a second trial because Mitchell would be confronted with his testimony from the various [sic] at the Grand Jury and McCraney's trial." This testimony, if accepted, is of course inconsistent with the prior testimony at trial. But it is not merely impeaching. It serves as freestanding evidence of McCraney's innocence, and does not merely call into question Mitchell's testimony. *See Wilson v. State,* 677 N.E.2d 586, 588 (Ind.Ct.App. 1997) (citing *Dennis v. State,* 103 Ind. 142, 151–52, 2 N.E. 349, 355 (1885)) ("[E]vidence which destroys or obliterates the testimony upon which a conviction was obtained is not appropriately considered as merely impeaching evidence.").

Although acknowledging that the determination of witness credibility lies within the discretion of the postconviction court,

the State nevertheless asserts that Mitchell's recantation is not worthy of credit. It points out that the postconviction court initially denied relief, observing that this testimony was not worthy of credit. However, the postconviction court was free to change its view, and did so by granting McCraney's motion to correct error and then expressly finding that the recantation was worthy of credit.[2] The Court of Appeals did not give appropriate deference to this finding. After correctly pointing out that Mitchell had given a number of different statements regarding McCraney's involvement in the murder, it concluded, "[b]ased upon the willingness and ease with which Mitchell continues to change his version of events, we believe this evidence is not worthy of credit."

Whether a witness' testimony at a postconviction hearing is worthy of credit is a factual determination to be made by the trial judge who has the opportunity to see and hear the witness testify. *See, e.g., Webster v. State,* 699 N.E.2d 266, 269 (Ind. 1998) ("[W]hen ruling on a motion for new trial based on newly discovered evidence the trial court must assess the credibility of any proffered new evidence."); *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind. 1995) ("In determining whether a judgment is clearly erroneous, we do not ... determine the credibility of witnesses...."). Judge Clement, one of this state's most experienced criminal court judges, found Mitchell's postconviction testimony credible. It is not within an appellate court's province to replace the trial court's assessment of credibility with its

own. Certainly, it cannot be said that this finding was clearly erroneous.

As a final point the State argues that Mitchell's recantation is unlikely to produce a different result at a new trial. The postconviction court disagreed:

> Because Austin Mitchell's trial testimony was the only direct evidence that petitioner Gordon McCraney was involved in the killing of Truly Vaughn, his recantation of that testimony in a new trial would certainly call into question the reliability of the verdict in the McCraney case and would probably produce a different result.

Based on the facts described above, this conclusion also cannot be said to be clearly erroneous.

### Conclusion

The judgment of the postconviction court is affirmed.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

---

2. The postconviction finding was:

The recantation testimony of Austin Mitchell at the petition for post-conviction relief hearing stating that petitioner did not shoot at Truly Vaughn was credible. Austin Mitchell was eighteen years old when he was charged with a capital murder. He gave conflicting statements to the police wherein he in one statement, said that Benny Green[w]ade killed Truly Vaughn, and in his fourth and final statement, admitted he killed Truly Vaughn but that petitioner Gor-

don McCraney also shot him with a .22 caliber handgun. His explanation that he hoped thereby to spread the blame for the killing to avoid the death penalty is plausible. Although Mitchell testified at trial that McCraney shot Truly Vaughn three or four times when he was already on the floor, there was no evidence that Truly Vaughn was ever struck by a .22 caliber bullet. Austin Mitchell has nothing to gain by his recantation testimony.