36 So.2d 897

### WOODARD v. STATE.

6 Div. 661.

Supreme Court of Alabama.

June 17, 1948.

Rehearing Denied Oct. 14, 1948.

Earney Bland and Finis E. St. John, both of Cullman, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

LAWSON, Justice.

On the night of July 26, 1946, shortly after eight o'clock, the body of Wallace Dean was found lying in the driveway of a Mr. Sizemore, who lived on the south side of a road leading from Fairview on the west to Holly Pond on the east. Both towns are in Cullman County. Dean had been shot in the back. A 22 caliber bullet was removed from his body. Robbery does not appear to have been the motive, as his personal effects had not been removed.

A few minutes prior to the time that the body of Dean was discovered, a car was observed proceeding in an easterly direction on the Fairview—Holly Pond Road. A shot was heard. The car then went into the Sizemore driveway, backed out, and

then proceeded back toward Fairview, from which direction it had come.

An intensive investigation by law enforcement officers, including special State investigators, then followed. A man by the name of Chester was arrested in connection with the murder of Dean, but it seems that he was not convicted.

After many months this appellant, Robert Woodard, and one Horace Pope were separately indicted for the murder of Dean. They were separately tried. Both were convicted and both have appealed to this court.

The deceased and this appellant were taxicab drivers, both working for the same company. Pope also was a taxicab driver but worked for another company.

The State did not produce an eyewitness to the murder of Dean. In a large measure the State's case consisted of evidence tending to show that there was bad feeling between this appellant and the deceased; that Woodard had threatened to kill Dean; that he was interested in the woman with whom Dean was living and who was generally known as Mrs. Marie Dean; that he tried to date her before Dean was killed and that afterwards the appellant began to have sexual intercourse with Marie, which relation continued until a short time before he was arrested; that he threatened her and others if they talked; that he tried to cast suspicion upon others; on one occasion he told Marie he was a murderer and would murder again, but did not indicate whom he had murdered.

But the main witness upon whom the State seems to have relied for a conviction in this case was Fay Kelsoe, a young girl seventeen years of age at the time Dean was killed. The testimony of this witness may be summarized as follows:

She met the deceased the night before that on which he was killed. She had known the defendant and Pope, as she and her family had used their cabs. On the afternoon of July 26, 1946, Pope and the defendant came to her home to get her, but her mother would not let her leave with them. Later Pope returned alone and witness and her little sister left

with him at about 6:30 P.M. They went to Patterson's Cafe in Cullman, where she saw Woodard and Wallace Dean, the deceased. Dean was seated in his taxicab. Pope got out of the car and talked to the defendant, Woodard, but she could not hear the conversation. Shortly thereafter, witness, her little sister, and Pope drove out to a gravel pit where there had been a rock crusher, which place is generally referred to in the evidence as the "rock crusher." It appears to have been somewhere in the vicinity of the place where Dean's body was found. They arrived at the "rock crusher" at about 7:30 P.M. Sometime near eight o'clock Dean and Woodard arrived at the "rock crusher" in Dean's taxicab. Dean was driving and Woodard was sitting on the front seat beside Dean. Pope got into the back seat of Dean's car and the three of them proceeded toward Holly Pond, leaving witness and her little sister in Pope's car at the "rock crusher." After the three men had left, she saw another taxicab moving in the direction of Holly Pond, in which were Tab Brown, George, Horace and Johnny Patterson. About an hour later Woodard and Pope returned to the "rock crusher." Dean was not with them. Pope got back into his taxicab and they drove back to Cullman. Woodard preceded them, driving Dean's car. She did not ask Pope about Dean, but he voluntarily told her that Dean had been killed. They reached Cullman sometime between 9:00 and 9:30 P.M. and picked up Woodard who, after getting in the car, lay down in the back seat. At that time Woodard said that Dean had been killed. Woodard and Pope told her that she was as mixed up in it as they were and if she told they would kill her or some member of her family. They took witness and her little sister home around 9:30 P.M.

Immediately thereafter Fay began going with Pope and Marie Dean with the defendant, Woodard. The four of them frequently went on "dates" together. On an occasion when Fay, Pope and Woodard had driven to the home of Marie's father to get her, Woodard told Fay that he killed Dean.

There was evidence for the defendant tending to show that Marie Dean was not actually married to Wallace Dean; that he continued to visit a former wife; that Marie's father knew of such visits and did not like Dean and had threatened him; that about a month before Dean was killed Marie stated that she was apprehensive as to the safety of Wallace Dean inasmuch as her father had threatened to kill him. Several witnesses, as well as the defendant, established an alibi for him. Pope, who was also involved by the testimony of Fay Kelsoe, was called as a witness by the defendant Woodard. His testimony was a complete denial of all that Fay Kelsoe had testified to concerning the events of the night of July 26, 1946. According to his testimony, he was not in Cullman County at the time the murder is alleged to have occurred.

Woodard testified in his own behalf and denied that there was any hostility or bad feeling between himself and the deceased and claimed that they had always been good friends. He made specific denial of Fay Kelsoe's testimony concerning his activities on the night of the homicide. Likewise he denied ever making any threats against the deceased or that he attempted to have dates with his wife prior to the time that he was killed. However, he admitted the relationship with her after Dean's death. He positively denied that he ever made any statement to Fay Kelsoe or anyone else to the effect that he had killed Dean.

Witnesses for the defendant testified that they would not believe Miss Kelsoe under oath and that her reputation was bad. An expert witness called by the defendant testified that Miss Kelsoe was not "fully mentally competent"; that she had a type of depressive insanity and symptoms of hysteria. However, on rebuttal the State presented expert evidence to the effect that she was of normal mentality.

After conviction, Woodard duly filed a motion for a new trial. One of the grounds of said motion was newly discovered evidence. From said motion and the evidence offered by the defendant in support thereof it appears that shortly after Woodard was tried and convicted,

Pope was brought to trial upon the indictment charging him with the murder of Dean. Fay Kelsoe was again the main witness for the State. Pope was defended by Hon. Earney Bland and Hon. Finis St. John, prominent members of the bar of Cullman County, who had also represented Woodard. They testified in behalf of Pope in substance that subsequent to the trial of Woodard, the defendant in this case, Fay Kelsoe had told them that everything she said about her being out at the "rock crusher" with Woodard and Pope was a lie.

The entire testimony of these two lawyers given in the Pope case was introduced in evidence in support of Woodard's motion for new trial. The State offered no testimony on the hearing of the motion for new trial which in any way affects the testimony of these two lawyers. The only evidence offered by the State on the hearing of the motion for a new trial was to the effect that a jury convicted Pope in spite of the testimony of these two lawyers.

But as far as this record is concerned we have the testimony of two reputable members of the bar which shows that the chief witness for the State admitted to them that she had lied under oath in regard to extremely vital and material matters. Their testimony stands uncontradicted in this record. As before indicated, Fay Kelsoe was the only witness for the State who directly connected Woodard with the murder of Dean.

Unquestionably this evidence was discovered since the trial of Woodard and no lack of diligence in connection with its discovery appears. It is certainly material to the issue and is not of a cumulative nature. We think it such that it could change the result upon another trial. As before indicated, the jury which tried Woodard did not have the benefit of this evidence.

The State contends, however, that such evidence was before the jury before whom Pope was tried and nevertheless convicted him, hence, the same result would have followed in the trial of Woodard. We do not think that we can indulge in such presumption.

We are clear to the conclusion that the ends of justice will be met if this defendant is given another trial.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.

On Rehearing.

PER CURIAM.

Rehearing overruled.

BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.