Appellant was convicted by a Tallapoosa County Circuit Court of possessing marijuana for trafficking. Appellant was sentenced to five years' imprisonment and fined $25,000.
The state's first witness was J.W. Tapley of the Dadeville Police Department. In the early morning hours of August 2, 1980, Officer Tapley noticed a Cadillac automobile weaving on the road. The officer stopped the automobile and arrested the driver, Michael Dean Wall, for driving on the wrong side of the road. Appellant was riding on the passenger's side of the car when it was stopped.
Officer Tapley drove Wall to the county courthouse to perform an alcohol detection test. Officer Leonard Brand, Officer Tapley's partner, drove the Cadillac and appellant. As Officer Brand got into the automobile, he noticed a pistol on the driver's side and a shotgun on the back seat. While the P.E.I. test was being administered, Officer Brand returned to the automobile to remove the weapons. As he removed them, he noticed a cosmetics case in plain view on the floor of the passenger's side. While he was removing the case from the passenger's side, a large pocket of money fell out of the car, as well as a bag of green vegetable material. The case also contained white pills and drug paraphernalia.
Officer Brand took the case into the courthouse and asked who owned it. Both Wall and appellant denied ownership. He then obtained a search warrant, and, along with Deputy Sheriff David Berry, searched the automobile. The officers found a blue flight bag in the automobile trunk containing around three pounds of marijuana.
On cross-examination, it was determined that Mike Wall was driving the Cadillac when it was stopped, and he also owned the automobile.
Mr. Taylor Noggle, a state toxicologist, identified the flight bag and testified that he examined green vegetable material found in the bag. He determined the material to be marijuana.
The state called a series of witnesses who had seen appellant at a Marty's Marina during a party the night before appellant's early morning arrest.
Mr. Steve Morris was at Marty's Marina when appellant drove up in a beige Oldsmobile Cutlass. He testified that appellant asked him if he wanted to buy a bag of marijuana.
Mr. Randall Baker testified that he had ridden around with appellant and her cousin, Mike Branch, before going to Marty's Marina. While stopped to drink some beer and smoke marijuana, Mr. Baker walked around the back of appellant's automobile. While the trunk was open, Mr. Baker saw in the trunk a trash bag of marijuana and a "blue tote case."
Mr. Bobby Price testified that appellant drove up in a tannish Oldsmobile Cutlass *Page 1319 
and asked him if he wanted to buy a bag of marijuana. He saw her open her trunk and noticed a blue bag with marijuana in it. He stated that the bag appeared to be the same as the blue flight bag found in Wall's trunk, but he was not positive it was the same bag.
Mr. Ronnie Thomas testified that he also saw appellant at Marty's Marina on the night in question. Mike Branch and Randall Baker were with her. According to Mr. Thomas, appellant opened the trunk of her beige Oldsmobile Cutlass. In the trunk was a big unzipped bag which contained bags of marijuana. He saw someone walk up to the trunk and accept a bag of marijuana from appellant.
Appellant then walked up to a small group of people, pulled a bag of marijuana out of the cosmetics bag found in Wall's car, and asked if they would like to smoke a joint. After they all smoked a joint, appellant and Mike Branch left.
All of these witnesses stated on cross-examination that they knew Mike Wall or were at least acquaintances of his.
Michael Wall took the stand but invoked his Fifth Amendment right against self-incrimination.
After the state rested, appellant took the stand. She stated that she left her home in Georgia on the afternoon of August 1, to visit relatives in Alabama. Late that afternoon, she arrived at her aunt's house in Perryville where she was to spend the night. She had a blue canvas bag and a red overnight bag which she took into her aunt's house on arrival. She admitted going to Marty's Marina but denied attempting to sell marijuana. She also denied having marijuana in her car and she denied ever owning or seeing the cosmetics case or the blue flight bag found in Wall's car.
She stated that she met Wall at a local bar after she had left Marty's Marina. They had a few drinks and then left to find something to eat. She rode with Wall and her cousin drove her car. While looking for something to eat Wall was stopped by the police.
Margaret Branch, appellant's aunt, testified that appellant arrived at her house the afternoon of August 1. Mrs. Branch saw appellant unload the trunk and she did not see an overnight flight bag or a cosmetics case.
Mike Branch stated he rode with appellant the night of August 1. Before they went to Marty's Marina, they had stopped to get some beer out of the trunk and had inadvertently locked the keys in the trunk. Mr. Branch had to break the lock open to get into the trunk, and he testified that the only way to get into the trunk was to use a screwdriver.
He also stated he never saw a blue flight bag or a cosmetics case, and he never saw appellant attempt to sell marijuana that night.
On rebuttal, Mike Wall agreed to testify on a question-by-question basis. He testified that he met appellant at a local bar late at night on August 1. According to Wall, appellant attempted to strike a marijuana deal. After he rode with her a short distance from the bar, she opened up her trunk and offered to sell him marijuana. When asked if he saw the blue flight bag, he stated it was dark but he did not see a bag.
Late in the night appellant agreed to spend the night with Wall. They were first going to get something to eat, and Mike Branch was going to meet them at a local restaurant. Before she got into his car, appellant took a bag from her trunk and put it into his trunk. He denied ownership of the blue flight bag taken from his trunk.
The defense counsel recalled appellant, who denied putting anything into Wall's trunk.
Appellant raised a number of issues in her motion for new trial which constitutes the bulk of her arguments on appeal.
The most troubling issue raised in the motion concerns new evidence. During the motion for a new trial, appellant called Officer Mike Parrish to the stand. Officer Parrish was an undercover agent for the Alexander City Police Department. He had *Page 1320 
previously worked as a police officer investigating drug deals in Kansas.
Officer Parrish testified that he was present as a third party in an undercover role while Mike Wall bought cocaine from a David Story in the parking lot of the same local bar where he and appellant had met. Story was not related to the appellant. According to Parrish, Wall told him that the marijuana was his and he had his friends come and testify that the marijuana was appellant's and had been in her car.
From the record:
 "Q. Now, did you talk with Michael Wall about his having been arrested with Diane Story?
"A. Yes, sir, I did.
 "Q. And do you remember when this conversation took place the first time?
 "A. Yes, sir, it was in a car out in front of the Exit Inn. We were at a bar sitting out in the parking lot with a subject named David Story. And they were discussing at that time Mr. Wall was purchasing some cocaine from Mr. Story. And Wall was saying something about he had to be careful because he had been arrested in Dadeville before after leaving the Exit Inn.
 "Q. And if I might ask you this, now, when you were working, were you working at this time for the Alexander City Police Department?
"A. Yes, sir.
 "Q. And what was the nature of your work at that time?
"A. Undercover in Narcotics.
 "Q. Now, for the record, when you were working undercover and in narcotics, of course, you were not in uniform? And it was not known? It was not known to Wall, made known to Wall, that you were, of course, with the Police Department, was it?
"A. No, sir.
 "Q. And you said this conversation took place at the Exit Inn and that Michael Wall was there and who else was there?
"A. A subject named David Story.
 "Q. And what, if anything, did Wall say about his having been arrested on this occasion with Diane Story?
 "A. Just stated that he had been at the Exit Inn drinking.
"MR. GAVIN: We object. This would be hearsay.
"MR. DENSON: It's certainly —
 "THE COURT: Well, of course, it would be I presume to contradict what was said at trial. Overrule the objection.
 "A. Just said that he was out there drinking and that a man named Michael Branch which I know as Sprout Branch introduced a girl named Diane to Mr. Wall. And that they stayed around and drank for about an hour. And that they were going to go to the — I believe they said Omelette Shoppe to go to eat and apparently the girl was supposed to be with Wall. And Mike Branch was supposed to drive her car. And Mr. Wall said he knew better than to go through Dadeville. And he went through Dadeville and he had been drinking and that the police pulled him over, stopped him. And when they were stopping him that the girl had a bag of quaaludes in her purse. And she took them out of her purse and put them under Mr. Wall's seat. And Mr. Wall told her to get them out from under the seat. And she refused to do so. At that time, Mr. Wall said he was arrested for driving under the influence and that they took them out of the car and looked through the car and found the pills under the seat.
"Q. Did Mr. Wall say what kind of car he was driving?
"A. Cadillac, I believe.
 "Q. And what, if anything, on this occasion did Mr. Wall say about marijuana that was found in the trunk of the car?
 "A. He said that the police impounded his car and that he had some marijuana in the trunk in a bag and that it was his. But he blamed it on somebody else, the girl that was in the car.
 "Q. All right. Did he say how much marijuana was in the bag in the trunk? *Page 1321 
"A. No, sir, he said around three or four pounds.
"Q. Said how much?
"A. Approximately three or four pounds.
 "Q. And what, if anything, did he say about testifying in court against Diane Story?
 "A. The only thing he told me that he got some of his friends to come and testify that it was her dope and that it was in her car and that she needed a ride. And so he put it in his car and transported it. He was taking her to Alex City.
 "Q. All right. But he — if I understand you, he told you that this was not the case, that it was his marijuana?
 "A. Yes, sir. He just said that it was his and that it was in the trunk when he stopped."
Officer Parrish also testified that Wall had been convicted of selling the cocaine.
In Houston v. State, 208 Ala. 660, 95 So. 145, a case very similar to the present case, our Supreme Court stated:
 "The trial court will not, of course, be put in error for refusing a new trial because of newly discovered evidence when such evidence would not be admissible upon a retrial of the cause. This purported newly discovered evidence, being affidavits of two witnesses that the state's witness Felton admitted to affiants that he, and not the defendant, killed deceased, is but hearsay evidence — an extra-judicial confession — and would not be admissible to show that another committed the offense. A defendant can disprove his guilt by proving the guilt of some other person. Brown v. State, 120 Ala. 342, 25 So. 182; McDonald v. State, 165 Ala. 85, 51 So. 629. But this must be done by legal evidence, and not by the testimony of witnesses who heard another admit that he committed the offense; this is the merest hearsay — is but an extra-judicial confession or admission but admissible in evidence. Welsh v. State, 96 Ala. 92, 11 So. 450; Underhill on Criminal Evidence (2d Ed.) p. 276, § 145. While this newly discovered evidence was not admissible to show that another committed the offense, it will be admissible to impeach or contradict Felton, who testified as a witness against the defendant, after laying a predicate, and which was not done on the former trial because the proof shows that this newly discovered evidence was unknown to the defendant or his counsel at the time. This witness Felton was the most important one who testified against the defendant, and it is in fact questionable as to whether or not the state made out a case without his testimony and we are not able to say that proof of these statements would not probably change the result." [Emphasis added.]
The nature of Officer Parrish's testimony leads to the same result as in Houston. Not only would his testimony completely undermine Wall's testimony, it would also undermine every other state's witness who knew Wall and gave adverse testimony concerning appellant's actions leading up to the police stopping Wall's car. Each of these witnesses, in one form oranother, denied at trial what Parrish testified Wall toldParrish he had them do — appear in court and falsely accuseappellant of attempting to sell marijuana. It is certain that the state failed to make a prima facie case without this line of testimony from Wall's friends, since the only testimony linking appellant with the marijuana came from these witnesses, and "we cannot say that proof of these statements would not probably change the result." Houston, supra. This is especially so in light of the apparent neutrality of Officer Parrish and lack of motive in falsely testifying, as opposed to the obvious potential bias of Wall's friends and acquaintances who testified against appellant. We also note the potentially great weight a jury might give an apparently neutral officer of the law.
In a similar case, our Supreme Court held that the trial court erred in denying the defendant's motion for a new trial based on the pretrial testimony of two attorneys who represented the defendant at trial. According to the two attorneys the state's main *Page 1322 
witness told them she lied when she gave highly incriminating testimony at trial. The court stated:
 "But as far as this record is concerned we have the testimony of two reputable members of the bar which shows that the chief witness for the state admitted to them that she had lied under oath in regard to extremely vital and material matters. Their testimony stands uncontradicted in this record. As before indicated, Fay Kelsoe was the only witness for the state who directly connected Woodard with the murder of Dean.
 "Unquestionably this evidence was discovered since the trial of Woodard and no lack of diligence in connection with its discovery appears. It is certainly material to the issue and is not of a cumulative nature. We think it such that it could change the result upon another trial. As before indicated, the jury which tried Woodard did not have the benefit of this evidence." Woodard v. State, 251 Ala. 314, 36 So.2d 897.
A jury would presumably give Officer Parrish's testimony even more weight because of his apparent detachment.
Even though Parrish's testimony would only be admissible to discredit or impeach the state's main witnesses, our Supreme Court has held that it is generally not error to deny a motion for new trial based on newly discovered evidence tending only to discredit the state's witness unless "upon the whole case it appears probable that the new evidence would change the result." Maund v. State, 254 Ala. 452, 48 So.2d 553. As discussed above, we cannot say this would not be the result if the evidence were before the jury. See also, Morris v. State,25 Ala. App. 156, 142 So. 592; Grissett v. State, 18 Ala. App. 675,94 So. 271; affirmed Ex parte State, 208 Ala. 439,94 So. 274.
Furthermore, this court, in Reynolds v. City of Birmingham,29 Ala. App. 505, 198 So. 360, held:
 "As to the insistence that the newly discovered evidence was merely impeachment of defendant's alibi, the rule in this regard has its exceptions and such proffered proof, even though simply impeaching may justify a new trial. Slaughter v. State, supra [237 Ala. 26, 185 So. 373]. Moreover, it has been held, and the view seems logical, that if the impeaching testimony tends to destroy or obliterate the effect of the evidence upon which the verdict rested, it is more than impeaching for that its tendency would be to defeat the verdict returned. Dennis v. State, 103 Ind. 142, 2 N.E. 349."
Neither is the evidence merely cumulative. Not only did Wall allegedly tell Parrish that the marijuana was his, but he also testified that he had been able to pin the charge on appellantand had asked his friends to testify that the marijuanabelonged to appellant. Appellant merely denied owning the marijuana. Furthermore, the fact that appellant denied ownership of the contraband does not render Parrish's testimony of Wall's confessed ownership of the marijuana merely cumulative. Woodard, supra; Morris, supra; Grissett, supra.
In light of Houston, supra, and the other cited authorities, we believe that the trial court erred in denying appellant's motion for a new trial based on newly discovered evidence.
Because of the unlikelihood the other issues appellant raised in her motion for a new trial will arise in a new trial, we do not deem it necessary to address the other issues presented.
REVERSED AND REMANDED.
All the Judges concur. *Page 1323